IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA A. MEDINA,<br><br>              Plaintiff,<br><br>      vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>              Defendant.<br>_____/ | CASE NO. CV-F-05-0711 LJO<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 12) |

Plaintiff Maria A. Medina ("claimant") seeks judicial review of an administrative decision denying her claim for Supplemental Security Income under the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a January 19, 2006 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on Mary 27, 2005 and her opening brief on January 18, 2006. The Commissioner filed her opposition to the appeal on February 17, 2006. Claimant did not file a reply brief.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Supplemental Security Income under the Social Security Act on December 23, 2002. (Administrative Record "AR" 86-89.) She alleges a disability onset of

November 15, 2001 due to back pain, headaches, arthritis of the hand, stomach problems and hernia surgery. (AR 14, 95, 119, 122.) Claimant's application for benefits was denied and denied upon reconsideration. (AR 70-73, 76-79.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on September 14, 2004. (AR 11-22.) The Appeals Council denied review. (AR 5-8.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

### Claimant's Background and Work Experience

Claimant was born on April 10, 1968. (AR 39.) Claimant completed the tenth grade. (AR 40.)

### Medical History

The pertinent medical history is summarized as follows.

X-rays of claimant's right hip and lumbar spine on December 5, 2000 showed a normal right hip and the X-ray of the lumbar spine showed chronic spondylolysis at L5 on the left with grade 1 posterolisthesis. (AR 301.)

On October 25, 2002, an MRI scan of the lumbar spine showed minimal anterolisthesis of L5 relative to S1 and questionable spondylolysis; a bulging disc and facet hypertrophy resulting in mild canal stenosis and bilateral foraminal stenosis and otherwise negative lumbar spine. (AR 135.)

Abdominal ultrasounds on February 13, 2001 and on January 22, 2002 were normal. (AR 137-138.) On September 11, 2002, claimant had a gallbladder ultrasound and the impression was cholelithiasis. (AR 136.) On October 18, 2002, Plaintiff had a laparoscopic cholecystectomy (surgical removal of the gallbladder) without complications, but continued to have persistent abdominal pain. (AR 248.) On November 22, 2002, underwent an endoscopic retrograde cholangiopancreatography sphincterotomy for severe ampullary (flasklike dilation of a tubular structure) stenosis (narrowing or stricture of a duct or canal). (AR 145-146.)

On February 26, 2003, claimant presented for a comprehensive orthopedic examination by Norman Linder, M.D. (AR 156-159.) Claimant complained of low back pain and pain and numbness shooting down the right lower extremity. (AR 156.) Dr. Linder did not have medical records to review. (AR 156.) On examination, claimant's coordination, station, and gait was normal. (AR 157.) Straight leg raise test was negative bilaterally. (AR 158.) Claimant had trigger points of the lumbosacral paraspinals and lower extremity strength was diminished slightly due to poor effort. (AR 158.) Dr.

Linder remarked that claimant had extremely poor effort during the evaluation and demonstrated excessive pain behavior. (AR 158.) Dr. Linder assessed that claimant was able to lift ten pounds frequently, twenty pounds occasionally, stand or walk for a total of six hours in an eight-hour work day with breaks, sit for a total of six hours in an eight-hour day with routine breaks, and an assistive device was not necessary over any distance of time or terrain.  (AR 158-159.) Dr. Linder also assessed that claimant should refrain from frequent climbing, stooping, and crouching.  (AR 159.)

On March 12, 2003, a State Agency physician reviewed the record and assessed that claimant was able to occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for about six hours in an eight-hour work day, sit (with normal breaks) for about six hours in an eight-hour work day, unlimitedly push and pull in both the upper and lower extremities, and occasionally stoop and crouch. (AR 160-167.)

From December 2001 through June 2003, claimant was seen at Brundage Medical Clinic.  (AR 168-194.)   She claimed on back pain, abdomen pain, heartburn.  In June 2002 claimant complained of back pain and was unable to get out of bed. (Ar 187.)  In October 2002, she was prescribed Celebrex and Darvocet. (AR 182.)  She reported that Celebrex was not beneficial. (AR 180.)  In February 2003, she was prescribed Vicodin and referred for physical therapy. (AR 176.)

On May 9, 2003, claimant was referred to O.B. Leramo, M.D of Bakersfield Neuroscience and Spine institute. (AR 286.) Claimant complained of chronic low back pain and pain radiating down both lower extremities. (AR 286.)   X-rays of the lumbar spine on June 2, 2003 showed spondylolistheses with flexion and extension. (AR 300.)

Following examination, Dr. Leramo's clinical impression was chronic low back pain, degenerative L5-S1 disc, degenerative anterolisthesis L5-S1 and probable mechanical low back pain. (AR 287.)  He recommended continued conservative treatment, Vicodin, Motrin, a nerve conduction study and to avoid repetitive bending and twisting of the spine.  (AR 287.)  A nerve conduction study on August 1, 2003 was normal and revealed no lumbar radiculopathy, no peripheral neuropathy in either limb and no peroneal nerve entrapment, bilaterally. (AR 279-280.)

On August 12, 2003, Dr. Leramo's office gave claimant a temporary disabled from August 12, 2003 to September 9, 2003.  (AR 278.)

On August 18, 2003, claimant had a two level lumbar diskogram, which show clinically negative but radiographically positive L4-5 disc injection where there is a linear Grade III dorsal annular tear and clinically negative but radiographically positive L5-S2 disc injection where there is a evidence for severe discogenic degenerative change. (AR 289-290.) On August 18, 2003, a CT scan of the lumbar spine showed linear Grade III dorsal and central annualar tear at L4-5, prominent discogenic degenerative changes at L5-S1 with peripheral annular enhancement, and bilateral L5 spondylolysis but without spondylolisthesis. (AR 291.)

In September 2003, claimant presented to the emergency with complaints of epigastric pain. (AR 386.) She was diagnosed with a pepticulse, dehydration and urinary tract infection. (AR 387.) On November 22, 2003, claimant present to the emergency room of abdominal pain radiating into her chest. (AR 378.) She was examined and diagnosed with Gastritis and non specific abdominal pain and discharged. (AR 378.)

An MRI of the lumbar spine on December 13, 2003, showed slight narrowing of the lateral aspects of the thecal sac on each side at L5-S1 due to degenerative facet changes and some narrowing of the neural foramina bilaterally. (AR 361.) In addition, a tiny protrusion of the posterior disc margin causes minimal impingement of the ventral thecal sac and at L4-5, protrusion of the posterior disc margin causes very slight impingement of the ventral thecal sac. (AR 361.)

On May 21, 2004, Dr. Leramo signed a memorandum indicating that claimant was pursuing having spinal fusion surgery once she has an appointment with a physician who accepts her insurance and can work with Dr. Leramo. (AR458.) On July 21, 2004, M. Rahimifar, M.D. signed a letter which stated that an operative procedure is a reasonable option in attempting to cure claimant's back condition but she is currently not a candidate due to the amount of narcotics she takes. (AR 459.)

**Hearing Testimony**

Claimant testified that she use to work as a helper at a school. (AR 41.) She is able to converse in English. (AR 43.) She worked in a jail, as a nurse's assistant, a cashier and a stocker. (AR 43.) She had to stop working because of pains in her stomach and in her back. (AR 44.) She has had two MRIs and her back pain has gotten worse. (AR 45-46.) She cannot do her chores, she is nervous, not the person she was, not happy. (AR 46.) Her legs go numb every day, whether she is standing, sitting or

laying down. (AR 46.) She gets medicine for the pain. (AR 47.) She also got a back brace which she used for 3 months. (AR 48.) She was told she needed surgery because there were three discs out of place in her back. (AR 49.) Her insurance was not accepted and she did not have the surgery. (AR 51.) She has had 2 injections for pain. (AR 51.) She has trouble sleeping. (AR 52.) Her five year old son stays home and she explains to him things he has to do, like getting dressed. (AR 52.) She recently had hernia surgery. (AR 53.) She still has stomach pains and it is pretty constant. (AR 54.) She takes medication. She can stand no more than 30 minutes; walk 2-3 blocks; lift 4-5 pounds. (AR 55-56.) Her hands also hurt. (AR 57.)

## **ALJ Findings**

In his September 14, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 14.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 21-22):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
2. The claimant's lumbosacral myofascial pain is a "severe" impairment, based upon the requirements in the Regulations. 20 CFR §416.920.
3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
4. The ALJ find the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
5. The claimant has the following residual functional capacity: to frequently lift and carry ten pounds and occasionally 20 pounds, to stand and walk six hours in an eight hour workday and to sit six hours in an eight hour workday. Additionally, the claimant can only occasionally climb, stoop and crouch.
6. The claimant is unable to perform any of her past relevant work. 20 CFR §416.965.
7. The claimant is a "younger individual between the ages of 18 and 44." 20 CFR §416.963.
8. The claimant has "a limited education." 20 CFR §416.964.

9. The claimant has no transferrable skills from any past relevant work. 20 CFR §416.968.

10. The claimant has the residual functional capacity to perform substantially all of the full range of light work. 20 CFR §416.967.

11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.17, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional imitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR §416.920(g).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to

determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) failed to properly assess her residual functional capacity, (2) additional evidence affects claimant's credibility of claimant's pain testimony, and (3) the Record should have been developed.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382a(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential analysis; that she has not been engaged in substantial gainful employment.

At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the medical evidence establishes severe impairment of myofascial pain. (AR 21.) No challenge is made at Step 3.

### The ALJ's Finding of Residual Functional Capacity

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that claimant had the residual functional capacity to perform light work. Under the applicable regulations, "light work" is defined as follows:

---

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b). If someone can do light work, it is determined that he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567 and 416.967. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

Claimant argues the ALJ erred in finding she has residual functional capacity for work. Claimant argues that it was error for the ALJ to rely upon the opinion of Dr. Linder because Dr. Linder did not have access to medical records and subsequent medical evidence was admitted into the Record. Claimant also argues that the evaluation of the medical evidence after the date of Dr. Linder's examination also impacts her pain testimony.

The ALJ summarized all of the evidence in the Record and reviewed the evidence from claimant's X-rays, MRI's, treatment records, and surgeries. (AR 15-17.) Dr. Linder examined claimant on February 26, 2003. The ALJ noted that Dr. Linder found claimant had the poorest effort and exhibited excessive pain behavior. (AR 16, 157.) She had negative straight leg raising while sitting. (AR 16, 158.) Dr. Linder opined that claimant could frequently lift 10 pounds and occasionally 20 pound; stand and/or walk 6 hours in an 8 hour day and sit for the same. (AR 16, 159.) She was limited from frequent climbing, stooping, and crouching. (AR 159.)

The ALJ then reviewed the medical evidence subsequent to Dr. Linder's examination. He reviewed Dr. Leramo's neurological consultation in which Dr. Leramo noted mild distress, some tenderness and limited range of motion, normal motor function. (AR 16.) Dr. Leramo reviewed the MRI and recommended conservative treatment and recommended a EMG/nerve conduction study.

1  Moreover, he only noted she was temporarily disabled. (AR 19, 278.)

2  The ALJ then reviewed the two-level lumbar discogram (AR 17), the CT scan of the lumbar spine, and the MRI scan of the lumbar spine. The MRI showed slight narrowing of the lateral aspects of the thecal sac on each side at L5-S1 due to degenerative facet changes and some narrowing of the neural foramina bilaterally and, a tiny protrusion of the posterior disc margin causes minimal impingement of the ventral thecal sac and at L4-5, protrusion of the posterior disc margin causes very slight impingement of the ventral thecal sac. (AR 17, 361.) Indeed, the ALJ noted the "mild" to "minimal" MRI findings. (AR 19.) The ALJ also reviewed the follow up treatment notes, and the opinion of Dr. Rahimifar. (AR 17.) As shown above, the ALJ reviewed all of the evidence, including the evidence which post-dated Dr. Linder's examination. The ALJ concluded:

> "Based on the mild to minimal MRI findings with no lumbar spinal stenosis or disc herniation, the normal EMG studies of the lower extremities without evidence of radiculopathy, the nature of her treatment the severity of her pain, the type and efficacy of her medications, her excessive pain behavior and poor effort and the extent of her daily activities, it is not credible that he limitations are as severe as she had alleged." (AR 19.)

The ALJ noted that claimant said she worked for another 10 years after she alleged her back first starting hurting her. (AR 19, 95.)

The ALJ considered claimant's testimony and contrasted it with the fact that no physician has imposed limitations to the degree alleged by claimant, among other reasons. (AR 19.)

It is clear from these findings that the ALJ analyzed the records and medical opinions. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict). The opinion of a reviewing physician and the ALJ's conducting an independent analysis of the medical evidence may constitute substantial evidence. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Thus, there is substantial evidence in the Record to support the ALJ's decision. The Court does not find error in the ALJ's assessment of residual functional capacity.

### The ALJ Playing Doctor

Claimant argues that the ALJ "played doctor" by reporting himself that the MRI results and the CT scan did not warrant a reduction in claimant's residual functional capacity. (Opening brief p.5.)

10

An "ALJ must not substitute his own opinion for those of physicians." *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975). At the same time, "When there is conflicting medical evidence, the ALJ is required to resolve such conflicts." *Morgan v. Apfel,* 169 F.3d 595, 602 (9th Cir. 1999).

As noted above, the ALJ did not consider the MRI results and the CT scan in isolation. The ALJ considered the totality of the evidence in the Record, evaluated the evidence and concluded that claimant has the residual functional capacity to perform light work.

Claimant argues that the ALJ should have obtained additional information from the treating physician or from a medical expert. (Opening brief p.6.)

Although the claimant bears the burden of proof where the evidence in the record is equivocal, the ALJ has a duty to assist in developing the record. *Armstrong v. Commissioner of Social Security*, 160 F.3d 587, 589-90 (9th Cir.1998); see also *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2084 (2000); 20 C.F.R. § 404.1512(a) (instructing claimant that ALJ will consider "only impairment(s) you say you have or about which we receive evidence"); *id.* §§ 404.1512(d)-(f) (detailing the ALJ's duties to develop a claimant's complete medical history before making a determination of non-disability; to obtain additional information if reports from claimant's medical sources contain ambiguities or are otherwise "inadequate for us to determine whether you are disabled;" and to order a consultative examination if unable to seek clarification from medical sources or if "the information we need is not readily available from the records of your medical treatment source"). If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

While claimant argues that the ALJ erred in failing to develop the Record, the Record shows that the Commissioner obtained the consultative examination, obtained the treatment records of all of the doctors, clinics and other treatment sources identified by claimant and obtained all diagnostic evidence. (AR 16-19.) The ALJ reviewed each of the treatment records and summarized the records and the doctor's opinions. The ALJ considered and relied upon the consultative examiner and reviewing physician, and the opinion of Dr. Rahimifar.

The Commissioner notes in her opposition brief that the ALJ left the Record open following the

11

1  hearing to obtain additional information. (Opposition brief p.11; AR 58.) The Commissioner also notes
2  that "from the time the oral hearing was held until the time the Appeals Council declined to review the
3  ALJ's decision, almost two years, plaintiff presented no additional evidence or 'ambiguous'
4  circumstances that would have warranted a need for clarification or a duty on the part of the ALJ to
5  contact plaintiff's medical sources." (Opposition brief p.11.)

6  The Commissioner's point is well-taken. Claimant does not argue that the additional evidence
7  was necessary because the existing evidence was ambiguous. The ALJ's duty to supplement a claimant's
8  record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the
9  ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *See Tonapetyan v. Halter*, 242
10 F.3d 1144, 1150 (9th Cir.2001). The Record was fully developed.

## CONCLUSION

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Maria A. Medina.

IT IS SO ORDERED.

**Dated:   April 10, 2006**                    **/s/ Lawrence J. O'Neill**
b9ed48                                         UNITED STATES MAGISTRATE JUDGE